# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

## SECOND AMENDED COMPLAINT AND REQUEST FOR INJUNCTIVE RELIEF
## 42 U.S.C. §1983 PRISONER CIVIL RIGHTS COMPLAINT

**WILLIAM E. COLEMAN, Jr.,**
Inmate # 456672



Plaintiff,

v.

CASE NO. **3:15cv172/MCR/EMT**

**CORIZON, LLC.**
a Florida Limited Liability Company,
**GARY OWENS,** Health Services Administrator,
in his official and individual capacity,
**ALLAN HO, M.D.,** Chief Medical Officer,
in his official and individual capacity,
**L. PHILLIPS,** Senior Registered Nurse,
in her official and individual capacity,
jointly and severally,

Defendant(s).

_____/

## ANSWER ALL QUESTIONS ON THE FOLLOWING PAGES

Filed0113*16UsDcFln3PM0337



## I.    PLAINTIFF(S)

State your <u>full name</u>, inmate number (if applicable), and full mailing address in the lines below.

> Name of Plaintiff:      **WILLIAM E. COLEMAN, JR.**
> Inmate Number:         456672
> Prison of Jail:           Century Correctional Institution
> Mailing Address:       400 Tedder Road
>                              Century, Florida 32535

## II.    DEFENDANT(S)

State the <u>name</u> of the Defendant in the first line, official position in the second line, place of employment in the third line, and mailing address. Do the same for **every** Defendant.

> 1)   Defendant's Name:     **CORIZON, LLC.**
>                                   a Florida Limited Liability Company
>        Official Position:        Private Contract Healthcare Provider
>                                   103 Powell Court
>                                   Brentwood, TN 37027-5010
>
>        Service Address:        **CORIZON, LLC**
>                                   Registered Agent
>                                   c/o CT Corporation System
>                                   1200 South Pine Island Road
>                                   Plantation, FL. 33324
>
> 2)   Defendant's Name:     **GARY OWENS**
>        Official Position:        Health Services Administrator
>        Employed at:            Century Correctional Institution
>        Mailing Address:        400 Tedder Road
>                                   Century, FL. 32535
>
> 3)   Defendant's Name:     **ALLEN HO, M.D.**
>        Official Position:        Chief Medical Officer
>        Employed at:            Century Correctional Institution
>        Mailing Address:        400 Tedder Road
>                                   Century, FL. 32535
>
>        Service Address:        Pensacola Medical Clinic
>        Mailing Address:        2407 West Cervantes Street
>                                   Pensacola, FL. 32505
>                                   Tel: 850/791-6200

ii

4) Defendant's Name: **L. PHILLIPS**
   Official Position: Senior Registered Nurse
   Employed at: Century Correctional Institution
   Mailing Address: 400 Tedder Road
   Century, FL. 32535

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Exhaustion of administrative remedies is required prior to pursuing a civil rights action regarding conditions or events in any prison, jail, or detention center. 42 U.S.C. § 1997e(a). Plaintiff is warned that any claims for which the administrative grievance process was not completed prior to filing this lawsuit may be subject to dismissal.

## IV. PREVIOUS LAWSUITS

NOTE: FAILURE TO DISCLOSE ALL PRIOR CIVIL CASES MAY RESULT IN THE DISMISSAL OF THIS CASE. IF YOU ARE UNSURE OF ANY PRIOR CASES YOU HAVE FILED, THAT FACT MUST BE DISCLOSED AS WELL.

      A) Have you initiated other actions in **State court** dealing with the same or similar facts/issues involved in this action?
Yes ( ) No (**X**)

      B) Have you initiated other actions in **Federal court** dealing with the same or similar facts/issues involved in this action?
Yes ( ) No (**X**)

      C) Have you initiated other actions (besides those listed above in Questions (A) and (B)) in **State or Federal court** that relate to the fact or manner of your incarceration (including habeas petitions) of the conditions of your confinement (including civil rights complaints about any aspect of prison life, whether it be general circumstances or a particular episode, and whether it involved excessive force or some other wrong)?

Yes (**X**) No ( )

If YES, describe each action in the space provided below. If more than one action, describe all additional cases on a separate piece of paper, using the same format as below.

    1. Parties to previous action:
        a.  Plaintiff(s): **William E. Coleman, Jr.**
        b.  Defendant(s): **Miami-Dade County,** *et. al.*
    2. District and judicial division: U.S. District Court, Southern District, Miami Division

iii

3. Name of judge: Seitz        Case #: 12-23216-CIV-SEITZ
4. Approximate filing date: 2012 (approximate)
5. If not still pending, date of dismissal: 2013
6. Reason for dismissal: Failure to state a claim
7. Facts of claims of case: Appellate attorney never notified the Plaintiff of the result of his direct appeal for seven (7) years.

D. Have you ever had any action in Federal court dismissed as frivolous, malicious, failing to state a claim, or prior to service? If so identify each and every case so dismissed.

Yes (**X**) No ( )

If YES, describe each action in the space provided below. If more than one action, describe all additional cases on a separate piece of paper, using the same format as below.

1. Parties to previous action:
   a. Plaintiff(s): **William E. Coleman, Jr.**
   b. Defendant(s): **Miami-Dade County, *et. al.***
2. District and judicial division: U.S. District Court, Southern District, Miami Division
3. Name of judge: Seitz        Case #: 12-23216-CIV-SEITZ
4. Approximate filing date: 2012 (approximate)
5. If not still pending, date of dismissal: 2013
6. Reason for dismissal: Failure to state a claim
7. Facts of claims of case: Appellate attorney never notified the Plaintiff of the result of his direct appeal for seven (7) years.

## V.    STATEMENT OF FACTS:

State briefly the facts of this case. Describe how each Defendant was involved and what each person did or did not do which gives rise to your claim. In describing what happened, state the names of persons involved, dates, and places. Do not make any legal arguments or cite to any cases or statutes. You must set forth factual allegations in separately numbered paragraphs. No more than five (5) additional pages should be attached. **If there are facts which are not related to this same basic incident or issued, they must be addressed in a separate civil rights complaint)**

iv

## STATEMENT OF THE FACTS

1.      Plaintiff William F. Coleman is incarcerated in the Florida Department of Corrections, at the Century Correctional Institution ("Plaintiff" or "Coleman").

2.      Defendant Owens at all times material in this complaint was engaged in the scope and course of employment for Defendant Corizon, LLC. Such acts of Defendant as further alleged herein were entirely within the course and scope of his employment.

3.      Defendant Ho at all times material in this complaint was engaged in the scope and course of employment for Defendant Corizon, LLC. Such acts of Defendant as further alleged herein were entirely within the course and scope of his employment.

4.      Defendant Phillips at all times material in this complaint was engaged in the scope and course of employment for Defendant Corizon, LLC. Such acts of Defendant as further alleged herein were entirely within the course and scope of her employment.

5.      Plaintiff's only access to healthcare services is by referral to the FDOC health services department.

6.      Corizon, LLC ("Corizon") is America's largest for-profit prison healthcare provider and had sought, bid and was awarded a inmate healthcare contract ("Contract") with the Florida Department of Corrections ("FDOC").

7.      Defendant Corizon is now, and at all times mentioned was, a Limited Liability Company organized and existing under the laws of Florida, and engaged in the business of operating a health care services to inmates in the Florida Department of Corrections that includes the Century Correctional Institution healthcare facility at 400 Tedder Road, Century, FL. 32535 for gain and profit.

8.      The contract covered Century Correctional Institution ("Century") and required that Corizon provide adequate healthcare services to inmates at FDOC health services departments, which included Century.

1

9. The contract outlined the medical services to be provided to inmates, and by doing so the services that Corizon agreed and had a duty to provide to Plaintiff would meet minimal level requirements under the eighth amendment to the U.S. Constitution so as not to run afoul of the cruel and unusual punishments clause of the U.S. Constitution.

10. The contract required and imposed a duty on Corizon to provide all health care services and manage those health care services provided to inmates on costs fixed within the contract that included the Plaintiff.

11. Corizon had operated and had a duty to perform under the contract that it had agreed to with the Florida Department of Corrections, which is to provide adequate levels of treatment to the Plaintiff.

12. Corizon agreed and had a duty to provide all health care services to inmates regardless of whether or not the inmate had the ability to pay for those medical services.

13. Corizon had agreed and had a duty under their contract to provide a higher standard of healthcare to inmates confined in the FDOC than the FDOC had previously provided by while managing their own healthcare employees. This included an anticipated overall cost reduction to the FDOC by at least seven percent (7%) in providing these healthcare services.

14. Corizon had failed and refused to provide an adequate level of medical care under their contract with the FDOC that included the Plaintiff.

15. Corizon's policies and practices contributed to making inmates sicker, and partly resulted in increased inmate deaths for lack of adequate and timely medical care.

16. Corizon has terminated its contract with the Florida Department of Corrections as it has found that its' contract is too restrictive and could not meet the adequate levels of health care services demanded in the contract.

17. Corizon's policies and practices deprived the Plaintiff of necessary medical care.

18. Defendant's Corizon and Owens are required to make Plaintiff's health care records available under HIPPA. These Defendants have refused to make Plaintiff's healthcare

2

records available until after he is released from prison and have denied the Plaintiff access to his health records.

19.    Defendant(s) Owens, Ho and Phillips regularly employee the practices and policies of Defendant Corizon so that Corizon will meet their contract requirements and Defendants Owens, Ho and Phillips know that their practices will result in medical neglect, and will result in injury to inmates as they use a process of subterfuge by falsifying medical records by placing notations in those records that are untrue and meant to deceive any person auditing their practices.

20.    Defendant(s) Owens, Ho and Phillips use what appear to be legitimate practices by making entries into medical records with diagnosis of illnesses that are misdiagnosed because these Defendants have a predisposition to deny medical care to inmates.

21.    Defendant(s) Owens, Ho and Phillips will use subterfuge such as various chronic care clinics to deny medical care to inmates. This is accomplished by these Defendants denying medical care to an inmate who exhibits illnesses at the chronic care clinic and instead of treating the illness these Defendants will then require that the inmate including Plaintiff must submit a sick call request for treatment. This delays the treatment and endangers the inmates and Plaintiff's health and well being.

22.    Defendant(s) policies and practices assist Defendant Corizon in meeting its contractual obligations by denying medical treatment to inmates and the Plaintiff in order to cut healthcare costs to the FDOC.

23.    Defendant(s) turn a blind eye to the medical needs of inmates including the Plaintiff so that if asked whether or not Plaintiff required medical treatment these Defendants can then claim they did not know about the need for medical treatment.

24.    Defendants also fail to properly sanitize the waiting area, as the benches cannot be sanitized because of the material they are made from, resulting in inmates catching contagious diseases from one another while in the waiting area that inmates must wait in the outside waiting area that includes packing inmates into a waiting area like sardines with 30-40 inmates at a time

3

in the waiting area meant for a maximum of 20 inmates, and seated on benches that cannot be sanitized from the contact of ill inmates who have contact with the benches while waiting in very close proximity to one another merely millimeters away from each other and made to pack 5 inmates onto benches made for a maximum of 4 inmates. This further contributes to the deliberate indifference to the sicknesses, and diseases spread from such close contact as inmates and Plaintiff are required to be seated in to await their turn to see one of the medical personnel in direct contact with one another while waiting. In addition fire code violations regularly occur in this waiting area as medical refuses to properly manage and schedule inmates to be seen by medical personnel, i.e. scheduling inmates to be seen by a doctor that is thirty miles away at the time inmates are scheduled to be seen and are waiting in the medical waiting area.

25.     While in the medical waiting area Plaintiff was dehumanized, degraded, treated with disrepute by Correctional Officer Lewis who yells, screams and has ordered inmates who have contagious diseases to sit so close to one another that one inmate with scabies was ordered by Lewis to sit down next to other inmates and this contributed to causing a scabies outbreak and resulting quarantine. As a form of mistreatment Officer Lewis regularly treats inmates awaiting medical treatment with disdain and degrades inmates by not even allowing an inmate to read a book or even a bible while waiting for medical treatment some as long as 8 hours and then being told that the appointment will be rescheduled and the illness going untreated.

26.     Scabies outbreaks were well reported in the local media of the Pensacola News Journal and by the State of Florida, Department of Health that went unchecked by the Defendants and misdiagnosed by Ho and Phillips in order to save costs through Corizon's policies and practices that these Defendants were required to follow on orders of Defendant Owens.

27.     Defendants practices of causing and calling dozens of inmates for appointments and to sit and wait in the medical waiting area without room for these inmates to wait and permitting contagious diseases to be spread through this extremely close contact between

4

inmates is deliberate indifference and/or disregard of the health of the Plaintiffs medical needs and disregard for basic healthcare protocols to prevent the spread of contagious disease.

28. Plaintiff does not have any other alternative for obtaining medical care other than from Defendant Corizon and its employee Defendants administered by Corizon employees Owens, Ho and Phillips.

29. Each of the Defendants Owens, Ho and Phillips are private individuals and are not due qualified immunity.

30. Plaintiff arrived at Century Correctional Institution on August 8, 2011, suffering from various illnesses that were diagnosed and treated by the medical staff and doctors on staff at that time. At the time of these diagnosis(s) Plaintiff was being treated by medical personnel employed by and subject to the medical practices, policies and oversight of the Florida Department of Corrections. ("FDOC"). The level of care provided to the Plaintiff by FDOC at the relevant times prior to Corizon providing healthcare services was adequate to meet constitutional requirements and typically alleviated the conditions and symptoms associated with Plaintiff's illnesses.

31. At the time that Corizon began taking over the responsibility for providing healthcare services to inmates, Corizon also instituted a number of healthcare policies and practices that were unpublished and summarily implemented without any authority to do so, that have ultimately deprived Plaintiff of adequate medical care to treat his illnesses.

32. Defendant Corizon's policies and practices of depriving Plaintiff of needed healthcare were policies and practices which have led to the withholding of medical care from inmates such as the Plaintiff for want of money to pay for that healthcare and have been deliberately indifferent to Plaintiff's medical needs by the withholding of care, withholding of medications to treat illnesses, and creating a subterfuge and healthcare fraud by documenting the times Plaintiff is being seen by Defendant's when these healthcare visits were only a manner and means for Defendant(s) to make it appear that they were rendering health services to inmates when in reality a person would triage the Plaintiff and offer hand cream, ibuprofen, Tylenol and

5

send the inmate Plaintiff on his way without ever being seen by a clinician to properly diagnose and treat a medical condition.

33.     Plaintiff's medical records will show that prior to the Corizon's implementation of the contract for care issued by the Florida Department of Corrections in favor of private medical contractor Corizon Health, Inc., and its' employee(s) Gary Owens, Health Services Administrator and Chief Medical Officer Defendant Allan Ho, M.D. Plaintiff had been receiving the necessary medical treatment for his illnesses and medical conditions.

34.     After Corizon took over the daily care and responsibility for Plaintiff's healthcare there began a pattern and practice of abuses by Defendant Owens, Ho, and Phillips that directly lead to the increasing physical pain and suffering by the Plaintiff from his medical condition. Defendants were withholding necessary medical services through their subterfuge and fraud in order to lower healthcare costs of services that should have been provided to the Plaintiff.

35.     Corizon Medical Services policies and practices dictate(d) how and when a medical professional can treat an inmate condition and with what medicine(s) are available for that treatment. These treatment policies and practices are based on cost of service including medicines that are not approved for treatment of inmate conditions because of their costs although regularly available to the general public some of which are effective over the counter medications denied to the Plaintiff because he is a prisoner.

36.     If a medical professional seeks to treat an inmate such as the Plaintiff with a condition that is not on the approved Corizon treatment regiment, Corizon's policies dictate that the inmate be denied treatment because of the costs of a medication even though they may be readily available. These medications are being denied to the Plaintiff on account of costs even though they are available over the counter in any CVS or Walgreen pharmacy.

37.     Defendant Corizon's policies that are a result of the private contract management for medical care in the Florida Department of Corrections by policy is driven by costs without consideration of the true medical condition of the Plaintiff and other inmates and their need for

6

medical treatment which Corizon regularly denies based on cost, so that Defendants can meet their reduction in healthcare costs in their contract with the FDOC.

38.     Defendant Corizon's policies and practices as managed and implemented by Defendant(s) Owens, Ho and Phillips were denying Plaintiff necessary medical care and medication as these Defendants would purposefully withhold medical care based on Corizon's policies and practices of denying needed healthcare to inmates. Instead Corizon and the Defendants provided managed care through treating emergency conditions that have actually resulted in sever inmate injuries and deaths on account of Defendants unwillingness to provide a reasonably adequate level of care to Plaintiff and other inmates.

39.     Corizon medical administrators and professionals would regularly deny needed care to inmates and Plaintiff so they would receive job benefits and incentives from their employer by meeting cost containment measures that actually jeopardize Plaintiff and other inmates health and safety by withholding necessary medical care. Medical care is regularly denied by the Defendants so that hey can meet performance levels in their contract. Because the mistreatment of inmate healthcare the result has been increasing costs of illnesses as Defendants have mismanaged and denied medical care until a time comes where the medical condition becomes critical and treatment costs increase.

40.     Because of these policies and practices Corizon has now moved to terminate its' contract as its' medical treatment practices have resulted in large scale complaints, deaths of inmates, and significant increases in healthcare costs.

41.     If a medicine is available for treatment of a condition that Plaintiff suffers from Corizon's policies bar the use of the medication for Plaintiff's condition because of costs; costs which are infinitesimal as compared to the costs that will be required for emergency services that may be required as the Defendant's continue to deny Plaintiff a reasonable level of care and medicine for his conditions.

42.     Defendant Corizon's policies and practices award their employees, medical practitioners or clinicians, when these medical professionals deny treatment to inmates in order

7

to lower their cost of care that is ultimately charged to Corizon under their contract and passed on the Florida Department of Corrections.

43.    In order to lower healthcare costs Defendant Corizon has created a policy that is unwritten and unpublished that for an inmate to see a doctor or nurse practitioner that the inmate must be seen three times at a sick call before being afforded the opportunity to see anyone other than an Emergency Medical Technician (EMT) or licensed practical nurse (LPN) who are the employees that diagnose the illness. This causes numerous misdiagnosis because of the untrained nature of the EMT and LPN.

44.    Corizon's policies and practices, deny inmate's and the Plaintiff of medical treatment. Corizon has instituted a policy that charges the Plaintiff $5.00 per sick call. This fee is for each sick call request that is turned in; so that if the Plaintiff suffers from more than one condition he must submit a separate sick call form for each symptom or illness and be charged $5.00 each time. In this way Corizon then collects the $5.00 fee and lowers the cost of the providing of medical services to inmates.

45.    Plaintiff is required to be seen at a sick call three times for each symptom or condition before a clinician sees the Plaintiff even when there have been viral infections and scabies infections that are regularly misdiagnosed based on Corizon's policies and practices. These outbreaks have been regularly documented and appeared in the Pensacola News Journal and other media outlets.

46.    Plaintiff suffers from a chronic sinus condition that causes infection(s), which produces painful and labored breathing and other symptoms that are not being properly treated that endangers the Plaintiff's overall health and well being. Some of these painful manifestations include painful swelling of the area of the face directly under the eyes, and severe migraine headaches that induce nausea. Defendants have not been treating these chronic sinus conditions. Defendants have used their methods of fraud and subterfuge to assert that they have been treating the Plaintiff when in fact the subterfuge sick calls have done nothing to provide the needed treatments for the conditions that Plaintiff has contracted.

8

47.     Plaintiff has also contracted a fungal or bacterial infection on his hands that was contracted from him being required to clean the prison bathrooms without protective devices, necessary and clean rags and brushes, i.e. gloves and proper footwear. In addition to these fungus and bacteria which grow, as the chemicals provided for cleaning are watered down and become ineffective to sanitize the housing area, which includes lack of available cleaning materials to correctly eliminate infections including scabies, are not provided by prison personnel sufficient to eliminate scabies outbreaks.

48.     Defendants have failed and refused to require FDOC and FDOC has refused to provide hot water for washing of clothes at the prison laundry that has not been replaced since the hot water boiler broke over six (6) months ago, that has also permitted and contributed scabies infections to fester and actually induces scabies and bacterial infections because of the lack of hot water for clothes washing in the laundry. Defendants have not treated this condition contracted by the Plaintiff and as a result Plaintiff has contracted severe cracking of his tissue on his hands. At various times due to this untreated condition Plaintiff's hands have begun to bleed. Because this is not an emergency Plaintiff's open sores, suppurate and infection continues to grow and attending sick call is not providing the needed treatment for this condition. Lack of proper hot water washing of clothes is contributing to the lingering of Plaintiff's medical conditions.

49.     Plaintiff's hands possess a series of dark and dead areas that will crack open, producing painful cuts, which are the product of systemic bacterial or viral infection derived from contact with an infectious source while cleaning the showers with no protection.

50.     On or about September 27, 2013, the Plaintiff went to sick-call for the fungal infection on his hands, sinus infection, the renewal of a shaving pass and bottom bunk pass, and to renew various medications for migraine headaches, and Triamcinalone (hands).

51.     On October 2, 2013, the Plaintiff was called out to see Defendant Allan Ho. From the start, his demeanor was brusque, rude, unprofessional and wholly disruptive. Defendant Ho stated, "I have reviewed your chart. You will receive Triamcinalone for your dry skin on your

9

hands; I will give you a new medication for your sinus infection; I will not renew your migraine medication; and, you do not need a bottom bunk pass because I see no reason physically. We're finished, you may go!" This type of examination without discussion of the cause and conditions is typical of the deliberate indifference to the Plaintiff's medical needs as Defendant Ho failed to conduct and further examination of the Plaintiff's condition or the real source for the illness without more was deliberately indifferent to the Plaintiff's medical needs as Defendant Ho refused to provide medication available over the counter that would treat Plaintiff's medical condition.

52.     Defendant, Allan Ho, never conducted any physical examination of the Plaintiff and his confiscation of medical passes, coupled with his attitude of indifference has been, and continues to be a conscious display of a lack of medically ethical examination required of patients and a purposeful deliberate indifference to the Plaintiff's serious medical needs.

53.     Defendant Ho's practices are based on Defendant Corizon's policies in failure to supervise and/or oversee Defendant Ho's and its' employees practices. Defendant Corizon purposefully fails to supervise or engage its' employees because to do so will result in the finding that the Defendants are not providing an adequate and reasonable level of care. In several audits by the FDOC Bureau of Contract Management and other FDOC departments it was found that Corizon's policies and procedures were severely deficient in numerous areas of failing to provide an adequate level of medical care to inmates.

54.     Plaintiff's medical records will show that Defendant Ho reduced the medicinal strength of the Triamcinalone from 1.0 to 0.025, and where the cream already did not work, the new cream made it worse. Defendant Ho's directive of "new" medication given for the ongoing sinus infection was completely and wholly ineffective and Defendant Ho refused to allow Plaintiff to explain the symptoms and what physical ailments that Plaintiff was suffering from before telling the Plaintiff what he was going to do or not do.

55.     As part of the Plaintiff's efforts to obtain care from the Defendants, he was in so much pain that he reached out to Ms Regina L. Harris, Executive Secretary, Office of Health

10

Services, Florida Department of Corrections by correspondence. This communication conveyed all the surrounding problems that Plaintiff was not receiving a level of care necessary to alleviate his medical conditions. Ms Harris also responded to the Plaintiff but both of these FDOC personnel were powerless to require that Defendants provide the necessary medical treatment.

56.     Plaintiff had also contacted Jonathan Hutchins, Assistant Warden-Programs "open-door" policy and verbally requested assistance Mr. Hutchins assistance. Plaintiff has described to Mr. Hutchins on four (4) different visits using the "open-door" policy and by written request outlining his medical conditions. Mr. Hutchins had, and still has, personal knowledge of the pain and suffering the Plaintiff has suffered, as well as his up close view of the results of Defendants history of denying medical care to inmate's by Defendant Ho's deliberate indifference. Defendant Hutchins' was powerless to alleviate the failure and refusal of the Defendants to provide an adequate and constitutional sufficient level of medical care.

57.     On or about February 22, 2015, the Plaintiff spoke face to face, in a personal conversation with Mr. Hutchins, standing outside of Canteen # 1 for approximately twenty (20) minutes outlining the pain and suffering and showing Mr. Hutchins the extent of injury to his hands. Although Defendant Hutchins "oohed and aahed" in an attempt to sympathize with the Plaintiff's condition, he promised to personally contact the Defendants. The Plaintiff explained his fear to Defendant Hutchins regarding the Medical Department just letting inmates die such as Inmate Harry Sheffield, and Mr. Hutchins specifically asked the Plaintiff to give him one week because of the upcoming ACA accreditation inspection, and he would personally contact the Defendants in an effort to get the needed medical attention.

58.     Assistant Warden Hutchins contacted Defendant Corizon, Owens and directed Corizon, Owens to provide medical care to the Plaintiff, and that Defendants Ho, and Phillips be ordered do so immediately. Notwithstanding Assistant Warden Hutchins order to provide medical treatment to the Plaintiff Defendant Owens, Ho, and Phillips refused to provide adequate medical care within a reasonable time so that the Plaintiffs' s illness would not worsen.

11

59. On or about June 10, 2014, the Plaintiff was called out to the Medical Department at 7:30 A.M., and seen by Nurse E. Parker. Ms. Parker stated: "Mr. Coleman, why are you not taking your blood pressure medication?" The Plaintiff responded that he did not have any blood pressure medication and that the prescription was to be renewed on the 21st of May and that he had placed all "scripts" in the box on the 17th and nobody called him out to receive meds. Nurse Parker told the Plaintiff that Defendant Ho would see him, and asked the Plaintiff to wait. Defendant Ho called the Plaintiff to follow him to be seen. Defendant Ho then turned, and in an angry tone of voice asked the Plaintiff why he was not taking his blood pressure medication, and when the Plaintiff responded that he did not have any blood pressure medication, Defendant Ho snapped. Defendant Ho said something that was unintelligible, and the only words the Plaintiff could make out were "pill line." When the Plaintiff said, "Excuse me?" in an effort to get Defendant Ho to repeat himself, Defendant Ho stated, "You unnastand exactly what I say...stop acting like dumb nigga!" At that point, the Plaintiff understood that there was no sense in going to the Medical Department for anything, as long as Defendant Ho was there, and to date the Plaintiff is very scared and wary of this Defendant due to the fact that this Defendant has exhibited a constant and vile pattern of racist, and constitutionally violative conduct.

60. Approximately the third week of July, the Plaintiff was called to see Inspector Hartsel in the Administrative Building of Century Correctional Institution. The Plaintiff filed a taped complaint against Defendant Ho, with the Florida Department of Corrections, Office of the Inspector General's Office case number 14-8210, in which, not only did the racism of Defendant Ho become exposed, but the validity and veracity of the Plaintiff's medical condition concerning the infection, painful and open lacerations, and black dead patches on the Plaintiff's hands was exposed, as the inspector took pictures of the Plaintiff's injuries.

61. On September 24, 2014, both the Plaintiff's medical conditions had become painfully unbearable. The Plaintiff dropped off a sick-call slip in the box at the PM meal period, and on September 25, 2014, the Plaintiff was called-out to Medical for sick-call. The Plaintiff was first seen by Defendant Phillips, who was supposed to take the Plaintiff's vital signs, view

12

the injury or sickness, and refer the Plaintiff to see Defendant Ho. The sick-call slip was placed for the infection on the Plaintiff's hands, which had gotten completely out of control with eight (8) open lacerations, two (2) of which were bleeding. Defendant Phillips played with the Plaintiff stating, "Oh! There's nothing that can be done for that! It's just dry skin and you're gonna have that for the rest of your life. We need to just get you some new hands!" Defendant Phillips then proceeded to deny the Plaintiff access to Defendant Ho, or any medical care and played and joked as if there was nothing wrong. Defendant Phillips provided no medical assistance at all, and then when questioned about the Plaintiff's injuries by the Officer in Medical, Defendant Phillips just laughed stating that the Plaintiff needed to "stop acting like a sissy and toughen up!" She made this statement while walking away and back into the Medical Department, closing the door on her way in. In seeing the Plaintiff Defendants usual subterfuge was then entered in the medical file to make it appear that the Plaintiff saw Defendant Ho, as if he saw him on that day. The Plaintiff did not see Defendant Ho until October 2, 2014 and not for the hand condition that Plaintiff continues to suffer from. At no time did Defendant Ho see the Plaintiff for the condition on his hands.

62.    Plaintiff suffers painfully, as the muscles and joints of his upper body are becoming suspiciously restricted with regard to the most simplistic tasks, such as bathing and dressing. The ball joints of the Plaintiff's shoulders are swollen and each movement requires assistance. Even laying down is painful.

63.    Plaintiff cannot raise his arms above his head without extreme pain. It is Plaintiff's belief, that there is systemic poisoning or infection in his blood, as he can only imagine how long his body has attempted to fight off infection with no assistance from the Defendants.

64.    Because Plaintiff has no other recourse for his medical treatment his conditions continue to develop and worsen.

65.    The actions of the named Defendants has become personal because it was purposeful, and lacks common sense, the actions of the above-named Defendants are plainly

13

below the normal standards of human dignity and decency, stressing racial inferiority, by Defendant Ho's purposeful racial discrimination when he referred to the Plaintiff as a "dumb nigga."

66.     The dehumanizing effects of the lack of treatment based not only on policies and practices of the Defendant's but also based on their clear racial bigotry is denying Plaintiff a minimal level of care that is deliberately indifferent to the Plaintiff's medical needs and violates the eighth amendment of the U.S. Constitution.

## JURY DEMAND

67.     Plaintiff demands trial by jury of all issues of right to be tried by jury.

## NO OTHER AVAILABLE OR ADEQUATE REMEDY AT LAW

68.     Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. The Plaintiff has been, and will continue to be irreparably injured by the conduct of the Defendants unless this Honorable Court grants the relief the Plaintiff seeks. Plaintiff has completed all requirements precedent to bring suit.

## V.     STATEMENT OF CLAIMS:

State what rights under the Constitution, laws, or treaties of the United States you claim have been violated. Be specific. Number each separate claim and relate it to the facts allege in Section V. **If claims are not related to the same basic incident or issue, that must be addressed in a separate civil rights complaint.**

## COUNT I
## CORIZON POLICIES AND PRACTICES DELIBERATE INDIFFERENCE
## GARY OWENS DELIBERATE INDIFFERENCE TO PLAINTIFF'S MEDICAL NEEDS
## GARY OWENS REFUSAL TO ENFORCE AND PROVIDE ADEQUATE LEVEL OF CARE
## VIOLATION OF AND CONSPIRACY TO DEPRIVE PLAINTIFF OF CIVIL RIGHTS
## VIOLATION OF EIGHTH AMENDMENT CRUEL AND UNUSUAL PUNISHMENT

69.     Paragraphs 1-68 are hereby incorporated by reference as if set forth at length.

70.     This is combined allegations of Title 42 U.S.C. §1983, *et. seq.*, and §1985.

71.     Defendant Corizon used its policies and implemented its practices to reduce the healthcare available to the Plaintiff. To accomplish this Corizon implemented its' policies so that

14

its' employees including Defendant Owens would carry out is illegitimate policies meant to deny basic medical treatment to inmates, thereby reducing costs.

72.     Defendant Corizon requires that Defendant Owens follow their policies and procedures and in relying on those policies Defendant Owens exceeded the authority granted him contrary to the limits of Corizon's policies, knowing that his action were a violation of basic medical needs of the Plaintiff and turning a blind eye to policies that denied medical care to inmates.

73.     Defendant Gary Owens, is, and was, at all times relevant to this Complaint, employed by Corizon as the Health Services Administrator responsible for oversight of the medical services department at Century Correctional Institution.

74.     Defendant Owens is a private actor and is not due qualified immunity. Defendant Owens exceeded the authority conferred upon him and is personally liable for injury sustained by the Plaintiff.

75.     Defendant Owens personal knowledge of the Plaintiff's numerous medical conditions, his refusal to provide medical care based on Corizon's policies and directives, and his personal refusal to request needed medications as the Health Services Administrator exceeds the authority given to him by Corizon.

76.     Owens has failed in his mandated duty to alleviate, and safeguard the Plaintiff from the risk of harm and permanent disfigurement, as well as the inherent level of extreme pain that is sufficiently serious enough to cause suffering violative of the Eighth Amendment proscription against cruel and unusual punishment.

77.     Owens strict adherence to Defendant Corizon's policies and practices to provide medical treatment based on cost that inmates do not deserve adequate medical care and/or treatment that has caused the wanton and unnecessary infliction of pain and suffering, a direct, and officially sanctioned violation by Corizon of the Plaintiff's Eighth Amendment rights.

78.     Defendant Owens is at all times, has shown, and continues to show, deliberate indifference to the Plaintiff's serious medical needs, and as such, is sued in his individual and

15

official capacity. Plaintiff is due judgment against Defendant Owens in his official capacity as an employee of Corizon and in his individual capacity for exceeding his authority.

79.    Defendant Corizon is responsible for its deliberate indifference to the denial of medical care to the Plaintiff as Corizon knew that in order to comply with the contract it would requires that Corizon not only implement policies to deny medical care to inmates, and thus the Plaintiff, Corizon came to rely on the fact that its' employees would go along with the unwritten policies of the denial of medical care to Plaintiff to meet the contract requirements and to keep their jobs.

**WHEREFORE**, Plaintiff requests judgment against Defendant Corizon and Owens for their policies, practices in violation of the Eighth Amendment of the U.S. Constitution and damages in a sum within the jurisdictional limits of this court, together with costs of suit, and such further relief as the court deems proper. Plaintiff demands trial by jury of all issues triable as of right by jury.

## COUNT II
## HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT CORIZON AND OWENS REFUSAL TO MAKE PLAINTIFF'S MEDICAL RECORDS AVAILABLE REQUEST FOR INJUNCITVE RELIEF TITLE 42 U.S.C. §1320d, *et. seq.*

80.    Paragraphs 1-68 are hereby incorporated by reference as if set forth at length.

81.    Defendant Corizon and Gary Owens, at all relevant times are responsible for storage, keeping, and accessibility by patients to their medical records and that includes a duty to ensure that Plaintiff has access to his medical records if requested and that if requested by the Plaintiff he is entitled to a review of his medical records in a reasonable amount of time.

82.    Plaintiff has made several requests to Defendants for his medical records and has been denied access to those records.

83.    Plaintiff has been denied access to and copies of his medical records.

84.    Plaintiff demands judgment against Defendant Owens and Corizon.

16

85. Plaintiff demands injunctive relief and judgment against Defendant Corizon and Owens and direct these Defendants to immediately make Plaintiff's medical records available to him for review.

**WHEREFORE**, Plaintiff requests injunctive relief and judgment against Defendant Corizon and Owens for their policies, practices in violation Health Insurance Portability and Accountability Act and damages in a sum within the jurisdictional limits of this court, together with costs of suit, and such further relief as the court deems proper. Plaintiff demands trial by jury of all issues triable as of right by jury.

## COUNT III

### ALLEN HO, M.D. DELIBERATE INDIFFERENCE TO MEDICAL NEEDS
### ALLEN HO, M.D. REFUSAL TO PROVIDE ADEQUATE LEVEL OF CARE
### VIOLATION AND CONSPIRACY TO DEPRIVE PLAINTIFF OF CIVIL RIGHTS
### VIOLATION OF EIGHTH AMENDMENT CRUEL AND UNUSUAL PUNISHMENT

86. Paragraphs 1-68 are hereby incorporated by reference as if set forth at length.

87. The Defendant, Allan Ho, M.D. is, and was, at all times relevant to this Complaint, the Chief Medical Officer, assigned to Century Correctional Institution, and employed by Corizon Medical, a Comprehensive Health Care Contractor, contracted to provide services to the inmate population by the State of Florida, and/or the Florida Department of Corrections.

88. Defendant Ho, having personal knowledge of the Plaintiff's numerous medical conditions, has failed in his duty to provide medical care and treatment consistent with evolving standards of decency, displaying a racially and personally motivated continual pattern of reckless and negligent conduct for the very purpose of causing harm, with treatment so inappropriate as to evidence intentional maltreatment and the callous deliberate indifference to the Plaintiff's Constitutional right to be free from cruel and unusual punishment.

89. Defendant Ho, through his own purposeful ignorance, and strict adherence to Corizon's written and unwritten established policy that all inmates are "subhuman", and do not

17

deserve "proper" medical care and/or treatment has caused the wanton and unnecessary infliction of pain and suffering.

90.    Defendant Ho is at all times, has shown, and continues to show, deliberate indifference to the Plaintiff's serious medical needs, and as such, is sued in his individual and official capacity. Plaintiff is due judgment against Defendant Ho in his official capacity as an employee of Corizon and in his individual capacity for exceeding his authority.

**WHEREFORE**, Plaintiff requests judgment against Defendant Ho for violation of Plaintiff's Eighth Amendment rights under the U.S. Constitution and damages in a sum within the jurisdictional limits of this court, together with costs of suit, and such further relief as the court deems proper. Plaintiff demands trial by jury of all issues triable as of right by jury.

**COUNT IV**
**PHILLIPS DELIBERATE INDIFFERENCE TO MEDICAL NEEDS**
**PHILLIPS REFUSAL TO PROVIDE ADEQUATE LEVEL OF CARE**
**VIOLATION AND CONSPIRACY TO DEPRIVE PLAINTIFF OF CIVIL RIGHTS**
**VIOLATION OF EIGHTH AMENDMENT CRUEL AND UNUSUAL PUNISHMENT**

91.    Paragraphs 1-68 are hereby incorporated by reference as if set forth at length.

92.    Defendant, L. Phillips, is, and was, at all times relevant to this Complaint, a Senior Registered Nurse, Century Correctional Institution, employed by Corizon, a Comprehensive Health Care Contractor, contracted to provide services to the inmate population by the State of Florida, and/or the Florida Department of Corrections that includes the Plaintiff.

93.    Defendant, L. Phillips, having personal knowledge of the Plaintiff's numerous medical conditions, has failed in her duty to provide adequate medical care and treatment consistent with evolving standards of decency, displaying a personally motivated, reckless, and by conduct for the very purpose of causing harm, with treatment so inappropriate as to evidence intentional maltreatment and the callous deliberate indifference to the Plaintiff's medical needs.

94.    Defendant, L. Phillips, through her own purposeful ignorance, and strict adherence to Corizon's written and unwritten established policy that all inmates are "subhuman",

18

and do not deserve "proper" medical care and/or treatment has caused the wanton and unnecessary infliction of pain and suffering.

95.     Defendant Phillips at all times, has shown, and continues to show, deliberate indifference to the Plaintiff's serious medical needs, and as such, is sued in her individual and official capacity.

96.     Plaintiff is due judgment against Defendant Phillips in her official capacity as an employee of Corizon and in her individual capacity for exceeding her authority

**WHEREFORE,** Plaintiff requests judgment against Defendant Phillips for violation of Plaintiff's Eighth Amendment rights under the U.S. Constitution and damages in a sum within the jurisdictional limits of this court, together with costs of suit, and such further relief as the court deems proper. Plaintiff demands trial by jury of all issues triable as of right by jury.

## COUNT V
## NEGLIGENCE-COMPARATIVE NEGLIGENCE
## CORIZON, OWENS, HO, AND PHILLIPS

97.     Paragraphs 1-68 are hereby incorporated by reference as if set forth at length.

98.     At all times material Defendant Corizon's policies and practices, as well as their duties under their contract were implemented without due consideration of the Plaintiff's healthcare needs.

99.     This negligence was ordinary negligence, and not alleged medical malpractice pursuant to §766.102, Florida Statutes. This negligence was the complete disregard for ordinary care in performance of Defendants job responsibilities in scheduling medical care, without consideration of its financial gain and contrary to its' duties under the contract.

100.    This ordinary negligence arose independent of any medical diagnoses, treatment, or care and was arose solely from the negligent performance of an act that was capable of being successfully and safely by any lay person. The act undertaken required no special medical skill or judgment and did not result from the breach of any professional standard of medical care.

19

101.    Defendant Corizon is liable for the negligence of its employee(s) pursuant to the doctrine of *respondeat superior*.

102.    As a direct, proximate and reasonably foreseeable result of the negligence of Defendant(s) as described above, Plaintiff has suffered cracking and bleeding of his hands, lost touch and sensitivity, with resulting pain and suffering therefrom, and suffered physical handicap, and his working ability is impaired; the injuries are either permanent or continuing in nature and Plaintiff will suffer losses and impairment in the future.

103.    By reason of the negligence and reckless disregard for scheduling and adequately providing timely appointments for medical care without regard to financial gain Plaintiff was injured.

104.    As a direct and proximate result of the negligence and willful conduct of Defendant, Plaintiff suffered severe and permanent injuries, and has suffered, and will in the future suffer great physical pain and mental anguish.

105.    Because of Defendant's reckless, willful, and wanton misconduct, as described above, Plaintiff is entitled to an award of punitive damages.

**WHEREFORE,** Plaintiff requests judgment against Defendants Corizon, Ho Owens, Phillips, jointly and severally for damages in a sum within the jurisdictional limits of this court, and for punitive damages together with costs of suit, and such further relief as the court deems proper. Plaintiff demands trial by jury of all issues triable as of right by jury.

## COUNT VI
## MEDICAL MALPRACTICE DEFENDANT HO

106.    Paragraphs 1-68 are hereby incorporated by reference as if set forth at length.

107.    At all times mentioned, Defendant Ho was and still is a physician licensed to practice medicine in Florida and was engaged in the practice of general medical practice in Pensacola, Florida. Defendant's medical office is now located at Pensacola Medical Clinic, 2407 West Cervantes Street, Pensacola, FL. 32505.

20

108.    Defendant Ho was involuntarily forced out of his position with Defendant Corizon for his grossly inadequate medical practices, disdain for inmates and his racially divisive comments and statements to numerous person.

109.    At all relevant times Plaintiff entered into a physician-patient relationship with Defendant. Plaintiff through the contract employed Defendant to treat Plaintiff professionally for any and all medical care which Defendant had a duty to provide under the contract.

110.    Defendant undertook, as a physician to treat medical illnesses sustained by the Plaintiff as more fully described above.

111.    Defendant, in endeavoring to treat the illnesses, failed to exercise that level of care, skill, and treatment which, in light of all relevant circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers, in that Defendant negligently failed to: (a) Take an adequate medical history and review that history prior to treating the Plaintiff; (b) Conduct an adequate physical examination on one or more visits; (c) Keep himself abreast of current medical and scientific diagnostic tests, and studies and medical literature concerning diagnosis and treatment for the medical conditions, symptoms, and problems manifested by Plaintiff while a patient of Defendant Ho; (d) Act appropriately, including the failure to properly examine, perform diagnostic tests on, or treat Plaintiff's medical history, symptoms, and complaints; (e) Take appropriate action in light of repeated blood test results and other reports from various medical consultants; (f) Diagnose and treat Plaintiff's cracking hands and skin, bleeding, and other described medical conditions, by recommended methods, tests, and procedures; (g) Treat, by recommended medical procedures, the existence of medical conditions as described heretofore; (h) Take an adequate medical history of Plaintiff on one or more occasions; (i) Follow one or more recommendations or procedures recommended by the American Medical Association or similar organizations governing general medical practices; (j) Make a referral of Plaintiff or to seek adequate consultation for an accurate diagnosis and treatment of Plaintiff .

21

112.    As a direct and proximate result of Defendant's negligence, Plaintiff [husband/wife] has suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition. The losses are either permanent or continuing, and Plaintiff [husband/wife] will suffer the losses and impairments in the future.

113.    Plaintiff has made a reasonable investigation as to the above facts concerning Defendant's negligence.

114.    Plaintiff completed the pre-suit investigation of what treatment should have been provided with the limited resources available to the Plaintiff. Plaintiff has given Defendant pre-suit notice was completed through the administrative remedy process of the Florida Department of Corrections as further provided for in the contract to which Defendant had a duty he accepted to comply with its terms and by this contract recognizes that the pre suit notice requirement is provided through that administrative remedy procedure.

115.    Plaintiff has complied with all conditions precedent to the bringing of this action.

**WHEREFORE,** Plaintiff requests judgment against Defendant Ho for damages in a sum within the jurisdictional limits of this court, together with costs of suit, and such further relief as the court deems proper. Plaintiff demands trial by jury of all issues triable as of right by jury.

## COUNT VII
## GROSS NEGILGENCE AND WILLFUL MISCONDUCT

116.    Paragraphs 1-68 are hereby incorporated by reference as if set forth at length.

117.    Defendants Corizon, Owens, Ho and Phillips owed and breached duties of ordinary and reasonable care to Plaintiff in connection with their duty of care to Plaintiff as inmate in the Florida Department of Corrections.

22

118. Defendants breached their legal duty to Plaintiff and failed to exercise reasonable care and acted with reckless, willful and wanton disregard in the negligent administration, record keeping, access to medical care and implementation of medical care to be provided to Plaintiff.

119. Defendants knew, or should have known that their wanton, willful, and reckless misconduct would result in systemic mistreatment and withholding of care from inmates including the Plaintiff would cause temporary, permanent, physical injury, and deprivation of medical care over the relevant periods of time.

120. Defendants Corizon and Owens acted with gross negligence, willful misconduct, and reckless disregard for human life and safety by *inter alia* failing to properly supervise institutional defendants, and failing to properly and adequately inspect the medical operations at Century, and failing to audit the medical practices at Century, or otherwise turning a blind eye to what was open and obvious mistreatment of inmates contrary to the Plaintiff's medical needs.

121. Defendants, negligence, willful misconduct and reckless disregard for human life and safety by *inter alia* failing to provide adequate, and access to medical care, including denying inmates care on account of not being able to afford the medical care by their systemic practices of denying medical care to inmates through the sick call by not treating more than one medical illness at a time deprived inmates including the Plaintiff of necessary medical care.

122. Defendants Corizon and Owens gross negligence in failing to provide an independent means of inspection, and by turning a blind eye to what should have been open and obvious denial of medical care permitted Defendants Ho and Phillips to deny medical adequate medical care to inmates including the Plaintiff.

**WHEREFORE**, Plaintiff requests judgment against Defendant Corizon, Owens, Ho, and Phillips for the gross negligence and will misconduct for damages in a sum within the jurisdictional limits of this court, together with costs of suit, and such further relief as the court deems proper. Plaintiff demands trial by jury of all issues triable as of right by jury.

23

## COUNT VIII
## FRAUDULENT CONCEALMENT

123.    Paragraphs 1-68 are hereby incorporated by reference as if set forth at length.

124.    To the extent available under State law, Plaintiff is entitled to recovery against Defendants for their fraudulent concealment of material facts allowing the abhorrent conditions of medical services under Corizon to continue.

125.    Defendant Corizon and Owens at all times material hereto endeavored to cover up their lack of providing medical care to inmates through cover-ups in the medical records and arranging for services that appeared to be medically motivated when all that was being provided was a personal interview or entries into the computer systems asserting care had been rendered that had not.

**WHEREFORE,** Plaintiff requests judgment against Defendants Corizon and Owens for damages in a sum within the jurisdictional limits of this court, together with costs of suit, and such further relief as the court deems proper. Plaintiff demands trial by jury of all issues triable as of right by jury.

### RELIEF REQUESTED:

**WHEREFORE,** the Plaintiff respectfully prays that this Honorable Court enter judgment granting the Plaintiff:

a.    Plaintiff is suing all Defendants in their individual and official capacities, demands judgment jointly and severally, are hereinafter being sued for violating the Plaintiff's constitutional right to be free from cruel and unusual punishment by the deliberate indifference to the Plaintiff's serious medical needs, a distinctive and clearly established right under the Eighth Amendment to the United States Constitution.

b.    A declaration that the acts and omissions described herein violated the Plaintiff's rights under the Constitution and laws of the United States.

24

c.      A preliminary injunction ordering the Defendants to send the Plaintiff to an outside civilian hospital, preferable a veteran's hospital, where he can be "properly" treated to prevent death and disfigurement.

d.      A preliminary injunction creating a permanent legal deadline for access to the prison law library of at least twenty (20) hours a week until resolution of this suit, distinctly and particularly for the Plaintiff.

e.      A preliminary injunction ordering the Defendants to cease and desist with the clearly established institutional policy that inmates are "subhuman" and do not deserve proper treatment, medical or otherwise.

f.      A jury trial on all issues triable by jury.

g.      Monetary damages as enunciated in Section V, as to all Defendants.

h.      The Plaintiff's cost in this suit.

i.      Judgment for Plaintiff of all state law or common law claims inherent in the facts alleged.

j.      Construe this Amended Complaint liberally as Plaintiff is a prisoner and is proceeding *pro se*.

k.      Any additional relief this Honorable Court deems just, proper, and equitable.


**I DECLARE UNDER THE PENALTY OF PERJURY THAT THE FOREGOING STATEMENTS OF FACT, INCLUDING ALL CONTINUATION PAGES, ARE TRUE AND CORRECT.**

Date: __1/8/16__

_____
**WILLIAM E. COLEMAN, JR.,** *pro se*
DC# 456672
Century Correctional Institution
400 Tedder Road
Century, FL 32535

25

MR. WILLIAM E. COLEMAN, JR. #456672,
CENTURY CORRECTIONAL INSTITUTION
400 TEDDER ROAD
CENTURY, FLORIDA 32535

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
100 NORTH PALAFOX STREET
PENSACOLA, FLORIDA 32502

LEGAL MAIL